UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| TERRANCE E. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | Case No. 18- |
| ) | |
| THE BOARD OF TRUSTEES OF THE ) | |
| UNIVERSITY OF ILLINOIS; ) | EQUITABLE RELIEF IS SOUGHT |
| and MICHAEL JAMISON, ) | |
| and MICHAEL WASSOM, ) | DEMAND FOR JURY TRIAL |
| individually and in their official capacities, ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, TERRANCE E. SMITH ("SMITH") by his attorney James M. Kelly of the JAMES KELLY LAW FIRM, and for his Complaint against Defendants THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS ("Board"); and MICHAEL JAMISON ("Jamison"), MICHAEL WASSOM ("Wassom"), individually and in their official capacities states:

**JURISDICTION**

1. This action involves application of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e-2000e-17, 42 U.S.C. § 1981, and 42 U.S.C. § 1983.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this action involves claims that arise under the Constitution, laws, and treaties of the United States.

**VENUE**

3. Plaintiff, Smith, is a citizen of the United States of America currently residing in Champaign County, Illinois.

1

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events, actions, and omissions giving rise to this claim occurred within the Central District of Illinois, specifically, Champaign County, Illinois.

5. Venue is also proper pursuant to 28 U.S.C. § 1391 (b)(1) because the Defendant, Board's, principal place of business is located within the Central District of Illinois at 506 S. Wright St. Urbana, IL 61801, and all other Defendants, were at all times relevant, employees/agents of the Board.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Smith has exhausted his administrative remedies as required by Title VII by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

7. Smith received a right to sue letter from the EEOC, on July 14, 2018.

## FACTS COMMON TO ALL COUNTS

8. Smith was an employee of the Board from 2007 through his termination on August 10, 2017.

9. Smith is African-American.

10. On information and belief, all individual Defendants and all of Smith's direct supervisors are Caucasian.

11. During the entire course of his employment with the Board, Smith was a Building Services Worker ("BSW") and a member of Service Employees International Union Local No. 73 Chapter 119.

12. BSWs are responsible for cleaning and maintaining University buildings.

13. In early 2016, Smith began experiencing issues with Wassom, the daytime foreman assigned to his building.

14. On information and belief, at the time the incidents began, Smith was the only African-American BSW employed in his building.

15. Smith began receiving discipline and admonishment from Wassom and other supervisors for conduct which Caucasian employees engaged in without discipline or admonishment.

16. On repeated occasions, Smith was disciplined or admonished by his supervisors for failing to clean areas which he was not assigned to clean or had already cleaned.

17. Smith was admonished for wearing sweatpants to work when other Caucasian employees received no admonishment or discipline for wearing sweatpants.

18. On repeated occasions, Smith was admonished or disciplined by Wassom for incidents that occurred when Smith was not scheduled to work and not present in the building.

19. Smith was the only BSW disciplined for allegedly leaving doors open and/or unlocked.

20. On information and belief, doors were repeatedly left open and unlocked by other Caucasian employees when Smith was not present in the building.

21. Smith denied leaving doors open and/or unlocked, but still had his keys taken away by his supervisors, preventing him from accessing the cleaning supplies necessary to perform his job duties.

22. On information and belief, doors continued to be left open and/or unlocked, even after Smith had his keys taken away.

23. After Smith's keys were taken from him, Wassom told Smith that going forward, Smith would be required to pick up cleaning supplies in the break room.

24. On information and belief, none of the other, Caucasian, workers were required to pick up their cleaning supplies in the break room.

25. Smith was transferred to a different building and different shift in May of 2017.

26. After the transfer, Defendant Jamison became Smith's immediate supervisor.

27. Jamison regularly referred to Smith as "lazy" and "worthless" both in Smith's presence and in front of other employees.

28. Jamison disciplined and admonished Smith for "loafing" or taking unauthorized breaks, when in fact, he was helping other, less experienced, employees.

29. On information and belief, Caucasian employees were not disciplined for helping other employees.

30. Jamison also accused Smith of "loafing" as he had not completed cleaning of 10 rooms.

31. On information and belief, Caucasian employees were not required to completely clean 10 rooms during their shifts.

32. On or about June 9, 2017, Smith was cleaning a room while listening to music on a portable speaker. Jamison entered the room, screamed at Smith about the noise, and called Smith, who is a middle-aged African-American man, "boy."

33. On information and belief, Caucasian employees were allowed to listen to music while working.

34. On or about July 12, 2017, Smith was placed on administrative leave pending the filing of written charges of termination by the Board.

35. The Board terminated Smith on August 10, 2017.

36. On information and belief, two other African-American BSWs working under Jamison, were placed on administrative leave, pending termination, at approximately the same time as Smith.

37. On information and belief, Smith and two other BSWs (one Caucasian and one African-American) were placed on administrative leave in July 2017 for alleged "loafing" and "unauthorized breaks."

38. On information and belief, Smith and the other African-American BSW who were placed on Administrative leave in July 2012 were terminated. The Caucasian BSW was not terminated.

## COUNT I-UNLAWFUL EMPLOYMENT PRACTICES IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### Against The Board of Trustees of the University of Illinois

1. Smith re-alleges paragraphs 1-38 of this Complaint as if fully set forth herein.

2. The Board is an employer as defined by Section 2000e of Title VII because it is an educational institution engaged in an industry affecting commerce with more than 15 employees.

3. Section 2000e-1 of Title VII of the Civil Rights Act of 1964 bars employers from engaging in certain employment practices such as discharging or otherwise discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of his employment because of such individual's race," or to "limit, segregate, or classify" employees "in any way which deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee because of such individual's race."

4. The Board, through its agents and employees, subjected Smith to multiple adverse employment actions, including but not limited to: termination, disciplinary proceedings,

administrative leave, changes to hours of employment, change to location of employment, changes in privileges of employment, changes to job duties, and a hostile work environment.

5. The Board, through its agents and employees, did not subject similarly situated Caucasian BSWs to similar adverse employment actions despite the fact Caucasian BSWs engaged in conduct substantially similar to Smith's.

6. The Board, through its agents and employees, did subject similarly situated African-American BSWs to adverse employment actions for conduct substantially similar to Smith's.

7. The Board, through its agents and employees, subjected Smith to racially based comments as demonstrated by its employee, Jamison, calling Smith "boy" and repeatedly subjecting Smith to harmful racial stereotypes by calling Smith "lazy" and "worthless."

8. Thus, the Board violated Title VII by subjecting Smith to adverse employment actions, including termination, because of his race.

9. As a direct and proximate result of the Board's violation of Title VII, Smith did incur and continues to incur, damages including, without limitation: lost wages, back pay from the date of termination, lost benefits, front pay from the date of the filing of this complaint, interest, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

**COUNT II-UNLAWFUL INTERFERENCE WITH PLAINTIFF'S ABILITY TO MAKE OR ENFORCE CONTRACTS IN VIOLATION OF 42 U.S.C. § 1981.**
**Against The Board of Trustees of the University of Illinois**

1. Smith re-alleges paragraphs 1-38 of this Complaint as if fully set forth herein.

2. 42 U.S.C § 1981 prohibits interference with an individual's ability to make and enforce contracts on the basis of race.

3. Smith, as a member of Service Employees International Union Local No. 73 Chapter 119, was party to a contract between the Board and the Union which governed the terms and conditions of Smith's employment.

4. The Board interfered with Smith's ability to enforce the terms of his Union contract by subjecting Smith to multiple adverse employment actions, including but not limited to: termination, disciplinary proceedings, administrative leave, changes to hours of employment, change to location of employment, changes in privileges of employment, changes to job duties, and a hostile work environment.

5. The Board, through its agents and employees, did not interfere with the ability of other similarly situated Caucasian BSWs to enforce the terms of their Union Contracts by subjecting them to similar adverse employment actions despite the fact Caucasian BSWs engaged in conduct substantially similar to Smith's.

6. The Board, through its agents and employees, did interfere with the ability of similarly situated African-American BSWs to enforce the terms of their Union contracts by subjecting them to adverse employment actions for conduct substantially similar to Smith's.

7. The Board through its agents and employees interfered with the enforcement of Smith's Union contract by subjecting Smith to racially based comments as demonstrated by its employee, Jamison, calling Smith "boy" and repeatedly subjecting Smith to racial stereotypes by calling Smith "lazy" and "worthless."

8. Thus, the Board violated 42 U.S.C § 1981 by interfering with the terms of Smith's Union contract by subjecting Smith to adverse employment actions, including termination, because of his race.

9. As a direct and proximate result of the Board's violation of Smith's rights under 42 U.S.C § 1981, Smith did incur and continues to incur, damages including, without limitation: lost wages, back pay from the date of termination, lost benefits, front pay from the date of the filing of this complaint, interest, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

**COUNT III- UNLAWFUL INTERFERENCE WITH PLAINTIFF'S ABILITY TO MAKE OR ENFORCE CONTRACTS IN VIOLATION OF 42 U.S.C. § 1981.**
**Against Michael Jamison individually and in his official capacity**

1. Smith re-alleges paragraphs 1-38 of this Complaint as if fully set forth herein.

2. 42 U.S.C § 1981 prohibits interference with an individual's ability to make and enforce contracts on the basis of race.

3. Smith, as a member of Service Employees International Union Local No. 73 Chapter 119, was party to a contract between the Board and the Union which governed the terms and conditions of Smith's employment.

4. On information and belief, at all times relevant, Defendant Jamison was employed by the Board with the job title of Building Services Foreman.

5. Jamison had direct supervisory responsibilities over Smith, including the ability to recommend disciplinary actions, participate in decisions involving disciplinary actions, recommend termination, and recommend modification of the terms and conditions of Smith's employment.

6. Jamison interfered with Smith's ability to enforce the terms of his Union contract by subjecting Smith to multiple adverse employment actions, including but not limited to: termination, disciplinary proceedings, administrative leave, changes to hours of employment,

change to location of employment, changes in privileges of employment, changes to job duties, and a hostile work environment.

7.      Jamison did not interfere with the ability of other similarly situated Caucasian BSWs to enforce the terms of their Union Contracts by subjecting them to similar adverse employment actions, despite the fact Caucasian BSWs engaged in conduct substantially similar to Smith's.

8.      Jamison did interfere with the ability of similarly situated African-American BSWs to enforce the terms of their Union contracts by subjecting them to adverse employment actions for conduct substantially similar to Smith's.

10.     Thus, Jamison violated 42 U.S.C. § 1981 by interfering with the terms of Smith's Union contract by subjecting Smith to adverse employment actions, including termination, because of his race.

11.     As a direct and proximate result of Jamison's violation of Smith's rights under 42 U.S.C. § 1981, Smith did incur and continues to incur, damages including, without limitation: lost wages, back pay from the date of termination, lost benefits, front pay from the date of the filing of this complaint, interest, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

**COUNT IV-UNLAWFUL DEPRIVATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS IN VIOLATION OF 42 U.S.C. § 1983**
**Against Michael Jamison individually and in his official capacity**

1.      Smith re-alleges paragraphs 1-38 of this Complaint as if fully set forth herein.

2.      42 U.S.C. § 1983 prohibits an individual "acting under the color of any statute, ordinance, regulation, custom or usage of any State" from subjecting any other person to the

"deprivation of any rights, privileges, or immunities" secured by the Constitution and laws of the United States.

3. On information and belief, at all times relevant, Defendant Jamison was employed by the Board with the job title of Building Services Foreman.

4. The Board is the governing body of the University of Illinois, which is operated by the State of Illinois.

5. Jamison had direct supervisory responsibilities over Smith, including the ability to recommend disciplinary actions, participate in decisions involving disciplinary actions, recommend termination, and recommend modification of the terms and conditions of Smith's employment.

6. As Jamison's direct supervisory responsibilities flowed from his position as an employee of the Board, a state actor, his actions in exercising his supervisory responsibilities over Smith were under the color of a statute, ordinance, regulation, custom or usage, of the State of Illinois.

7. Jamison subjected Smith to multiple adverse employment actions including, but not limited to: termination, disciplinary proceedings, administrative leave, changes to hours of employment, change to location of employment, changes in privileges of employment, changes to job duties, and a hostile work environment.

8. Jamison did not subject similarly situated Caucasian BSWs to similar adverse employment actions, despite the fact Caucasian BSWs engaged in conduct substantially similar to Smith's.

9. Jamison did subject similarly situated African-American BSWs to adverse employment actions for conduct substantially similar to Smith's.

10. Thus, Jamison deprived Smith of his rights under the Constitution and laws of the United States by subjecting him to adverse employment actions because of his race and failing to treat him the same as similarly situated Caucasian BSWs.

11. As a direct and proximate result of Jamison's violation of Smith's Constitutional rights, Smith did incur and continues to incur, damages including, without limitation: lost wages, back pay from the date of termination, lost benefits, front pay from the date of the filing of this complaint, interest, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

**COUNT V- UNLAWFUL INTERFERENCE WITH PLAINTIFF'S ABILITY TO MAKE OR ENFORCE CONTRACTS IN VIOLATION OF 42 U.S.C. § 1981.**
**Against Michael Wassom individually and in his official capacity**

1. Smith re-alleges paragraphs 1-38 of this Complaint as if fully set forth herein.

2. 42 U.S.C. § 1981 prohibits interference with an individual's ability to make and enforce contracts on the basis of race.

3. Smith, as a member of Service Employees International Union Local No. 73 Chapter 119, was party to a contract between the Board and the Union which governed the terms and conditions of Smith's employment.

4. On information and belief, at all times relevant, Defendant Wassom, was employed by the Board with the job title of Building Services Foreman.

5. Wassom had direct supervisory responsibilities over Smith, including the ability to recommend disciplinary actions, participate in decisions involving disciplinary actions, recommend termination, and recommend modification of the terms and conditions of Smith's employment.

6. Wassom interfered with Smith's ability to enforce the terms of his Union contract by subjecting Smith to multiple adverse employment actions, including but not limited to: termination, disciplinary proceedings, administrative leave, changes to hours of employment, change to location of employment, changes in privileges of employment, changes to job duties, and a hostile work environment.

7. Wassom did not interfere with the ability of other similarly situated Caucasian BSWs to enforce the terms of their Union Contracts by subjecting them to similar adverse employment actions despite the fact Caucasian BSWs engaged in conduct substantially similar to Smith's.

8. Wassom did interfere with the ability of similarly situated African-American BSWs to enforce the terms of their Union contracts by subjecting them adverse employment actions for conduct substantially similar to Smith's.

10. Thus, Wassom violated 42 U.S.C § 1981 by interfering with the terms of Smith's Union contract by subjecting Smith to adverse employment actions, including termination, because of his race.

11. As a direct and proximate result of Wassom's violation of Smith's rights under 42 U.S.C § 1981, Smith did incur and continues to incur, damages including, without limitation: lost wages, back pay from the date of termination, lost benefits, front pay from the date of the filing of this complaint, interest, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

**COUNT VI-UNLAWFUL DEPRIVATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS IN VIOLATION OF 42 U.S.C. § 1983**
**Against Michael Wassom individually and in his official capacity**

1. Smith re-alleges paragraphs 1-38 of this Complaint as if fully set forth herein.

2.      42 U.S.C. § 1983 prohibits an individual "acting under the color of any statute, ordinance, regulation, custom or usage of any State" from subjecting any other person to the "deprivation of any rights, privileges, or immunities" secured by the Constitution and laws of the United States.

3.      On information and belief, at all times relevant, Defendant Wassom, was employed by the Board with the job title of Building Services Foreman.

4.      The Board is the governing body of the University of Illinois, which is operated by the State of Illinois.

5.      Wassom had direct supervisory responsibilities over Smith, including the ability to recommend disciplinary actions, participate in decisions involving disciplinary actions, termination, and modification of the terms and conditions of Smith's employment.

6.      As Wassom's direct supervisory responsibilities flowed from his position as an employee of the Board, a state actor, his actions in exercising his supervisory responsibilities over Smith were under the color of a statute, ordinance, regulation, custom or usage, of the State of Illinois.

7.      Wassom subjected Smith to multiple adverse employment actions including but not limited to: termination, disciplinary proceedings, administrative leave, changes to hours of employment, change to location of employment, changes in privileges of employment, changes to job duties, and a hostile work environment.

8.      Wassom did not subject similarly situated Caucasian BSWs to similar adverse employment actions despite the fact Caucasian BSWs engaged in conduct substantially similar to Smith's.

9. Wassom did subject similarly situated African-American BSWs to adverse employment actions for conduct substantially similar to Smith's.

10. Thus, Wassom deprived Smith of his rights under the Constitution and laws of the United States by subjecting him to adverse employment actions because of his race and failing to treat him the same as similarly situated Caucasian BSWs.

11. As a direct and proximate result of Wassom's violation of Smith's Constitutional rights, Smith did incur and continues to incur, damages including, without limitation: lost wages, back pay from the date of termination, lost benefits, front pay from the date of the filing of this complaint, interest, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

## JURY DEMAND

1. Plaintiff demands a trial by a jury.

WHERFORE, Plaintiff, TERRANCE E. SMITH, prays as follows:

1. That Judgment be entered in his favor and against Defendants THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS; and; MICHAEL JAMISON, and MICHAEL WASSOM.

2. For damages, including but not limited to: lost wages, back pay from the date of termination, lost benefits, front pay from the date of the filing of this complaint, interest, compensatory damages for emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life;

2. For equitable relief including but not limited to reinstatement or employment in a comparable position;

3. For reasonable attorney's fees and costs; and

4. For such other and further relief as this court deems equitable, proper, and just.

          TERRANCE E. SMITH
          Plaintiff

By:   */s/ James M. Kelly*
      James M. Kelly, his attorney.

James M. Kelly
Alex E. Davis
JAMES KELLY LAW FIRM
7817 N. Knoxville, Ave.
Peoria, IL 61614
Phone: (309) 679-0900
Fax: (309) 679-0919
Email: jim@jameskellylawfirm.com